# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLAS APRIL,<br>　　　　Plaintiff | )<br>)<br>) |
| v. | )　Civil Action No. 06-68 Erie<br>) |
| SUPERINTENDENT MARILYN BROOKS,<br>et al.,<br>　　　　Defendants. | )　District Judge McLaughlin<br>)　Magistrate Judge Baxter<br>) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.　　RECOMMENDATION**

It is respectfully recommended that Defendants' Motion to Dismiss Second Amended Complaint [Document # 42] be granted.

**II.　　REPORT**

　**A.　　Relevant Procedural History**

On March 20, 2006, Plaintiff Nicholas April, an inmate incarcerated at the State Correctional Institution at Albion ("SCI-Albion"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Originally named as Defendants were: Marilyn Brooks, Superintendent at SCI-Albion ("Brooks"); Dr. Mark Baker, Medical Director at SCI-Albion ("Baker"); Maxine Overton, Healthcare Administrator at SCI-Albion ("Overton"); and unnamed Jane and John Does, representing unknown medical and prison personnel. In his Complaint, Plaintiff alleged, generally, that Defendants were deliberately indifferent to his serious medical needs in violation of his rights under the eighth amendment to the United States Constitution. (Document # 3, Complaint, Sections III and IV).

Plaintiff subsequently filed an Amended Complaint on October 11, 2006 [Document # 19], setting forth the following causes of action, which are listed verbatim:

　　　　　　　　　　　　　　　Count I

　　　28.　　Defendant Brooks, Baker and Overton, as the Superintendent,

>                   Health Care Administrator and Medical Director of SCI
>                   ALBION, for supervisory liability for not giving their medical
>                   staff and officers proper training in handling a severe medical
>                   situation such as what transpired in Plaintiff's case.
>
>                                          Count II
>
>           29.     Defendants John and Jane Does, alleged medical personnel, for
>                   their deliberate indifference in the events that transpired on
>                   March 26, 2004, amounting to cruel and unusual punishment
>                   under the 8th Amendment....
>
>                                          Count III
>
>           30.     John and Jane Doe for allowing plaintiff to fall in the day room
>                   and not aiding him to the gurney outside, which amounted to
>                   deliberate indifference under the 8th Amendment.
>
>                                          Count IV
>
>           31.     Unknown, John Doe(s), guards who forced plaintiff to strip
>                   search and dress into a yellow jumpsuit with the statement if
>                   plaintiff did not comply he would not be going to the hospital;
>                   this was deliberate indifference under the 8th Amendment, which
>                   caused plaintiff additional pain and distress.
>
>                                          Count V
>
>           32.     The defendants violated plaintiff's 14th Amendment for not
>                   notifying his immediate family members of the heart attack,
>                   which is normal and standard protocol....

(Document # 19, Amended Complaint at ¶¶ 28-32).

On October 20 and 24, 2008, respectively, Defendants Brooks and Overton, and Defendant Baker filed motions to dismiss [Document ## 20 and 22] seeking dismissal of Plaintiff's Amended Complaint for failure to state a claim against them upon which relief may be granted. On April 13, 2007, this Court issued a Report and Recommendation recommending that Defendants' motions to dismiss be granted, and that the unidentified Jane and John Doe Defendants be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. [Document # 26].

On June 22, 2007, District Judge Sean J. McLaughlin issued a Memorandum Order adopting this Court's recommendation that the motions to dismiss filed by Defendants Brooks and Overton and Defendant Baker be granted, but rejecting this Court's recommendation that

the unidentified Jane and John Doe Defendants be dismissed. Instead, Judge McLaughlin granted Plaintiff sixty (60) days to identify the unnamed Defendants and to replead his claims against those Defendants. [Document # 28]. This Court subsequently granted Plaintiff an extension of time to identify the unnamed Defendants until December 14, 2007. [Document # 37].

On December 6, 2007, Plaintiff filed a document entitled "Identification of John and Jane Doe's in Amended Complaint," which this Court re-docketed as Plaintiff's Second Amended Complaint. [Document # 38]. In this Second Amended Complaint, Plaintiff: (I) identified R.N. Robert McGaughey ("McGaughey") and Correction Officer McEachern ("McEachern") as the previously unnamed Defendants who allowed him to fall in the day room and failed to aid him to the gurney outside, as alleged in paragraph 30 of Plaintiff's Amended Complaint. (See Document # 38 at ¶ 10; Document # 19 at ¶ 30); identified Correction Officers Yurchak and Shoulders as the previously unnamed Defendants who made him strip search and change into a yellow jumpsuit, as alleged in paragraph 31 of the Amended Complaint (See Document # 38 at ¶ 6; Document # 19 at ¶ 31); and identified McGaughey as the previously unnamed Defendant(s) who was deliberately indifferent "in the events that transpired on March 26, 2004" (See Document # 38 at ¶ 9; Document # 19 at ¶ 29).

On February 20, 2008, Defendants McGaughey, McEachern, Yurchak and Shoulders filed a motion to dismiss second amended complaint arguing, *inter alia*, that Plaintiff has failed to exhaust his administrative remedies. [Document # 42]. Plaintiff has since filed a response to said motion. [Document # 46]. This matter is now ripe for consideration.

### B.     Relevant Factual History[1]

Plaintiff alleges that on March 26, 2004, he suffered a severe heart attack while in his prison cell. (Document # 19, Amended Complaint, at ¶ 1). Approximately 15 minutes after his

---

[1] This factual recitation is taken directly from the allegations of Plaintiff's Amended Complaint, as supplemented by the Second Amended Complaint..

3

cellmate pushed the emergency call button to alert prison staff that Plaintiff was having a heart attack, Defendant McEachern arrived at Plaintiff's cell, asked some preliminary questions, and then called for medical personnel. (Id. at ¶¶ 2-3; Document # 38 at ¶¶ 1-2). Approximately ten minutes later, medical staff arrived and determined that Plaintiff needed to go to the medical department. (Document # 19 at ¶¶ 4-5). Instead of carrying Plaintiff to the medical cart, Defendants McGaughey and McEachern required Plaintiff to walk on his own, "down about twenty steps and ... across the day room," where Plaintiff "collapsed and [was] told to stand up and continue walking to the gurney outside." (Document # 19 at ¶¶ 6-7; Document # 38 at ¶¶ 4, 10). Once Plaintiff made it to the gurney, which was located approximately 50 yards from Plaintiff's cell, he was "forced to lay on a wet and cold platform and then driven to the medical department," where he was forced to walk to the examination room without assistance (Document # 19 at ¶¶ 8-9).

The medical personnel then performed an EKG and informed Plaintiff that he was having a heart attack, for which they gave him a nitroglycerin tablet and an aspirin. (Id. at ¶ 10). Plaintiff estimates that approximately 45 minutes passed from the time his EKG was taken until an ambulance was summoned. (Id. at ¶ 11). While waiting for the ambulance, Defendants Yurchak and Shoulders required Plaintiff to undergo a strip search and to change into a yellow jumpsuit. (Id. at ¶¶ 12-13; Document # 38 at ¶ 6). When the ambulance arrived, Plaintiff was transported to Millcreek Community Hospital ("Millcreek"), even though the hospital "was not equipped to handle a severe heart attack ..., solely because SCI ALBION has a contract with Millcreek," (Document # 19 at ¶¶ 15-16). At Millcreek, Plaintiff received pain medication, which SCI-Albion's medical staff failed to give him previously. (Id. at ¶¶ 18-19). Plaintiff was subsequently transferred to St. Vincent Health Center "in the early morning hours" of March 27, 2004, "for further evaluation and therapy." (Id., Exhibit 1 at p. 1). At St. Vincent, Plaintiff underwent an emergency heart catheterization and stenting of a "nearly total proximal LAD occlusion." (Id., Exhibit 1 at p. 1). After recuperating from his procedure, Plaintiff was discharged from St. Vincent on March 30, 2004, and returned to SCI-Albion. (Id. at ¶¶ 22-23).

4

### C. Standards of Review

#### 1. Motion to Dismiss

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, ___ U.S. ___, 127 S. Ct. at 1965 citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, ___ U.S. ___, 127 S.Ct. at 1965. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at ___, 1974.

#### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards

than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### D.	Exhaustion
####	1.	Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S.

140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[2]  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-2388 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

### 2. Procedural Default Component

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas

---

[2] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[3] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

To exhaust the administrative remedies within the DOC's grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the DOC inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate. The first step in the grievance process is for the inmate to file a claim with the institution's grievance officer. The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804 VI(B)(4). If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"). DC-ADM 804 VI(C)(1).

---

[3] There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

### 3. Exhaustion and Procedural Default Applied

Defendants argue that Plaintiff has failed to exhaust his administrative remedies. In support of this argument, Defendants have submitted the Declaration of Melinda Adams, Superintendent Assistant at SCI-Albion, who certifies that, from March 2004 to February 15, 2008, Plaintiff filed only two grievances, both dated September 22, 2005. (Document # 43, Exhibit B at ¶ 2).[4] The first of these grievances [Grievance no. 130494] complained about a Timex watch Plaintiff purchased from SCI-Albion's commissary and, thus, has no relevance to this case. (Document # 43, Exhibit B at p. 4). The second grievance [Grievance No. 140496] set forth the following complaint verbatim:

> On 3/26/2004. I suffered a major heart attack, and had to be transported to an outside hospital. I am in strong objection, and grieve the fact that it took 4 hours & 48 minutes to get me proper cardiac attention. Furthermore, after surgery by my cardiologist, Dr. Samuel Ward of St. Vincent's Hospital, I was prescribed the medication "Plavix," to keep my major heart arteries open. This medication was extremely helpful to me. In April of this year, I was taken off this medication. When I asked Dr. Baker why, he told me the prescription was only for a year. I objected & explained how helpful the medication was to me. But he still refused to renew the prescription. Since I have been denied this medication to keep my arteries open, I have been experiencing problems with my circulation. My hands and feet go numb at times, not to mention that this places me at a greater risk of further heart attacks. These actions make it appear the medical dept. holds a wanton disregard for my proper medical care, and is deliberately indifferent to my risk of further heart damage, or further attacks. I want my prescribed medication back, and proper medical care reinstated.

(Document # 43, Exhibit A at p. 8).

The principal focus of the foregoing grievance is Plaintiff's complaint that his heart medication was discontinued by Dr. Baker, which is not at issue in this case. The only portion of this grievance that is relevant to the case at hand is Plaintiff's "objection" to "the fact that it took 4 hours & 48 minutes to get ... proper cardiac attention," after his heart attack; however, this "objection" is hardly sufficient to constitute proper exhaustion of Plaintiff's allegations against the Defendants in this case. In particular, DC-ADM 804, § VI.A.7 requires an inmate to

---

[4] In his response to Defendants' motion, Plaintiff does not dispute that these are the only grievances he filed during the time period indicated.

9

include a statement of facts relevant to his claim(s) and to "identify any person(s) who may have information that could be helpful in resolving the grievance...." Here, Plaintiff did not include in his grievance any allegations that he was forced to undergo a strip search and change into a yellow jumpsuit, or that he was allowed to fall in the day room and made to walk to a transport gurney. Moreover, none of the Defendants was identified by name, description, or title. Thus, it is clear from the record that Plaintiff has failed to properly exhaust his administrative remedies with regard to the claims at issue in this case. Moreover, because the challenged events occurred on March 26, 2004, Plaintiff has procedurally defaulted on his claims. Accordingly, Plaintiff's claims against Defendants McGaughey, McEachern, Yurchak and Shoulders are not properly before this Court and must be dismissed.

## III    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss Second Amended Complaint [Document # 42] be granted and the case closed.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
Chief U.S. Magistrate Judge

Dated: April 16, 2008

cc:    The Honorable Sean J. McLaughlin
       United States District Judge